NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MATTHEW RAY SHIELDS, *Petitioner/Appellee*,

*v.*

MICHELLE LOUISE OGDEN-SHIELDS, *Respondent/Appellant*.

No. 1 CA-CV 21-0240 FC
FILED 7-19-2022

Appeal from the Superior Court in Maricopa County
No. FC 2016-094699
The Honorable Marvin L. Davis, Judge
The Honorable Laura M. Reckart, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Hayes Esquire PLLC, Phoenix
By Cody Hayes
*Counsel for Respondent/Appellant*

Matthew Shields, Surprise
*Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        Michelle L. Ogden-Shields ("Mother") challenges several superior court rulings in a decree of dissolution, the denial of her motion to amend the decree, and a post-decree order directing Mother's attorney to release funds to Matthew R. Shields ("Father"). For the reasons stated below, we vacate the court's denial of her request for attorneys' fees and remand for further consideration consistent with this decision. We affirm all other rulings in the decree and the post-decree orders.

## BACKGROUND

¶2        The parties married in 2000 and have two children. Father petitioned for dissolution in August 2016, and after a March 2019 trial, the superior court entered a decree addressing legal decision-making authority, parenting time, child support, spousal maintenance, allocation of community property and debts, and attorneys' fees. Mother moved to amend the decree under Arizona Rule of Family Law Procedure ("Rule") 83. On Father's motion, the court struck Mother's Rule 83 motion, and Mother appealed ("the first appeal").

¶3        In the first appeal, this court vacated the order striking Mother's Rule 83 motion and directed the superior court to consider the merits of that motion. *See Shields v. Ogden-Shields*, 1 CA-CV 19-0520 FC, 2020 WL 6840547, at *1 (Ariz. App. Nov. 19, 2020) (mem. decision). On remand, the superior court denied the motion without comment.

¶4        While the Rule 83 motion was pending on remand, Father renewed his earlier request for the release of refinance proceeds being held by Mother's attorney. Over Mother's objection, the superior court ordered her attorney to pay Father his share of refinance proceeds by April 9, 2021, or face sanctions.

¶5        Mother timely appealed the decree, the denial of her Rule 83 motion, and the order to pay Father his share of the refinance proceeds. We have jurisdiction under A.R.S. §§ 12-2101(A)(1), (2) and -2102(A).

## DISCUSSION

### I.  Allocation of Debts

**¶6**         Mother argues the superior court abused its discretion or erred in allocating several debts because it relied on Father's testimony which, she claims, was not clear or convincing.  We review the court's allocation of property for an abuse of discretion.  *Hrudka v. Hrudka*, 186 Ariz. 84, 93 (App. 1995), *superseded by statute on other grounds as noted in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014).

### A.  Father's Student Loan Debt

**¶7**         During the marriage, both parties incurred student loan debt. The record shows that Father still owed approximately $71,000 on his student loans at the time he served Mother with the petition.  According to Father, the parties used about $37,500 of his student loans for living expenses during the marriage.  Father argued that Mother should pay a portion of the total student loan balance because (1) some of the funds were spent on living expenses, and (2) Mother's student loans were paid off during the marriage.  The court agreed and ordered Mother to pay $9,375 of the student loan debt as Father requested.

**¶8**         Mother does not dispute that Father incurred the entire student loan debt during the marriage and does not object to paying her share of the actual amount spent on community living expenses.  Instead, she argues Father's estimate of the amount spent on living expenses does not support the judgment against her.  Mother misconstrues the burden of proof.

**¶9**         A debt incurred by either spouse during the marriage is presumed to be a community obligation, and the party challenging the community nature of a debt "bears the burden of overcoming that presumption by clear and convincing evidence."  *Hrudka,* 186 Ariz. at 91–92; *see also In re Marriage of Flower,* 223 Ariz. 531, 535, ¶ 12 (App. 2010). Because the student loan debt was incurred during the marriage, Mother had the burden of proving that it was not entirely a community obligation. *See Hrudka,* 186 Ariz. at 91–92.  Mother did not offer any evidence contradicting Father's testimony about how much of the loans was spent on community living expenses, and the superior court was within its discretion to accept his testimony.  *See Hurd v. Hurd,* 223 Ariz. 48, 52, ¶ 16 (App. 2009) (the credibility of witness testimony is for the superior court to determine).

¶10 Mother also argues the superior court failed to consider that Father could deduct the interest paid on the student loan in 2016 and that his failure to take the same deduction in 2017 increased his tax liability. This argument is waived because Mother did not raise it with the superior court; she cannot raise new theories on appeal. *See Bobrow v. Bobrow,* 241 Ariz. 592, 597, ¶ 23 (App. 2017).

### B. Father's Vacation and Sick Leave Payout

¶11 In 2017, Father changed jobs and received a payout of $22,312.31 for accumulated vacation and $4,629.51 for sick leave from his former employer. According to Father's calculations, $15,331.08 of the payout was earned during the marriage and he used that portion to pay off community credit card debts, benefitting the community. In addition, although the parties agreed to file joint tax returns in 2017, Mother filed separately. Thus, Father also filed separately and incurred $11,921 in increased tax liability as a result. He argued that Mother should pay half this amount. The court agreed with Father's position and ordered Mother to pay one-half of Father's 2017 tax liability ($11,921/2 = $5,960.50).

¶12 Mother contends the evidence does not support the conclusion that Father's 2017 taxes were higher solely due to the vacation and sick leave payout or having to file separately. On cross-examination, Father acknowledged that some taxes were withheld from the vacation and sick leave payout. But Exhibit 39 does not show that any *income* taxes were withheld. Thus, Mother failed to refute Father's contention that the payout increased his income and thus triggered additional income tax liability. The court's ruling is further supported by the fact that Mother did not file jointly as agreed, thus increasing what Father owed.

¶13 Mother also argues Father changed his withholding status, which resulted in a higher tax liability. This argument is waived because Mother did not raise it in the superior court. *Bobrow,* 241 Ariz. at 597, ¶ 23.

¶14 Next, Mother argues the court did not "independently verify" Father's assertion that the community portion of the vacation payout was $15,331.08. Father testified that a portion of the vacation time accrued after the date of service and thus his separate property. Father's pretrial statement further explained his calculation in greater detail. Because Mother did not refute that evidence, the record supports the calculation of the community share of Father's vacation payout, and she has shown no error.

### C.     Credit Card Debt Allocation

¶15     Mother argues the community debt allocation was unfair because Father used the community vacation payout to pay down three debts that were in his name only. Father, however, testified that the debts were for community expenses. The superior court found that Father's use of community funds to pay these three debts as well as several other community debts was appropriate, a finding supported by his testimony. Mother failed to show that these debts were not for the benefit of the community, so it was appropriate to use community funds to pay these community debts.

¶16     Mother argues there was a discrepancy in the decree as to the Hughes credit card debt. The court found that Father paid $4,790.50 of this debt from the community vacation payout, leaving a balance of $302. Father's testimony supports this finding. Yet the court also ordered Father to pay the Hughes debt "with a community balance of $4,138.86." The last statement from this account in November 2018 showed a balance due of $3,817.24. Although it is unclear how the court calculated the $4,138.86 amount, Father remains liable for the balance due on this debt. Because Mother has not shown how she was prejudiced by this discrepancy, she has not established that reversible error occurred.

¶17     Mother also contends the court failed to consider that the minimum monthly payment on the Bank of America credit card Father was ordered to pay is $90 less than the Bank of America credit card allocated to Mother. She did not raise this argument at trial, so it is waived. *Bobrow*, 241 Ariz. at 597, ¶ 23.

## II.    Spousal Maintenance

¶18     The superior court found that Mother could be eligible for spousal maintenance under A.R.S. § 25-319(A)(1) because she lacked sufficient property to provide for her reasonable needs. But after balancing the § 25-319(B) factors, the court denied Mother's request. We review spousal maintenance orders for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998).

¶19     Mother argues the court erred by failing to properly consider that (1) Father's income was approximately double hers; (2) she had a higher debt to income ratio; (3) her share of Father's debt was never lawfully established; (4) she should receive a proportionate share of the student loan interest deduction; (5) she was assigned a disproportionate

amount of Father's 2017 tax liability and other debts; and (6) her vehicle was incorrectly valued. Mother also argues the court ignored several statutory factors such as the marital standard of living, the ability of the payor spouse to meet his needs while paying spousal maintenance, the comparative financial resources of the parties, including their earning abilities, and the extent to which both spouses may contribute to the children's future education expenses. *See* A.R.S. § 25-319(B)(1), (4), (5), and (8). But the court specifically considered these factors, and its findings are supported by the trial evidence.

¶20 Although Mother disagrees with how the court viewed the evidence, we do not reweigh the evidence on appeal. *Hurd,* 223 Ariz. at 52, ¶ 16. We will affirm the ruling if substantial evidence supports it, and even conflicting evidence can constitute substantial evidence. *Id.* Mother has shown no error.

## III.    Attorneys' Fees in the Superior Court

¶21 The superior court denied Mother's request for attorneys' fees after finding there was a substantial disparity of financial resources favoring Father and both parties acted unreasonably at times, adding "however, this was primarily due to disparate positions." Mother argues that without more explanation, these findings do not support the court's decision to deny her fee request.

¶22 We review the court's ruling on a request for attorneys' fees under A.R.S. § 25-324(A) for an abuse of discretion. *Myrick,* 235 Ariz. at 494, ¶ 6. Under § 25-324(A), the court must consider two factors: the relative financial disparity of the parties and the reasonableness of the positions each party has taken. Financial disparity alone does not require the court to award fees to the party with fewer financial resources; it is a discretionary decision. *Myrick,* 235 Ariz. at 494, ¶ 9.

¶23 Because Father timely requested express findings of fact and conclusions of law under Rule 82, the court's factual findings must be sufficient to allow us to determine the basis for the ruling. *See Elliott v. Elliott,* 165 Ariz. 128, 135 (App. 1990). The findings here do not support the denial of attorneys' fees. First, the court found a *substantial* disparity of financial resources favoring Father. Second, the court found that both parties acted unreasonably but cited only their "disparate positions." Parties generally take disparate positions in a contested trial, and although noting that both parties acted unreasonably at times, the court did not refer to any other objectively unreasonable positions taken by Mother. *See In re*

*Marriage of Williams*, 219 Ariz. 546, 549, ¶ 12 (App. 2008) (holding that the reasonableness of a litigant's position under § 25-324(A) is determined by an objective standard). Although Father provides examples of Mother's arguably unreasonable positions, "we do not infer additional findings necessary to sustain the award" when a party makes a Rule 82 request. *Stein v. Stein,* 238 Ariz. 548, 551, ¶ 12 (App. 2015). We vacate the portion of the decree denying Mother's request for attorneys' fees and remand for further findings.

## IV.     Final Decision-Making Authority

**¶24**         The superior court denied Mother's request for final decision-making authority. Mother argues this ruling was not supported by the evidence and constituted legal error. We review the legal decision-making order for an abuse of discretion and accept the findings of fact absent clear error. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018).

**¶25**         The court found that the parties agreed they should be awarded joint legal decision-making, but that Mother asked to be the "Deciding Parent" on all issues relating to the children, based on her perceptions that Father was not making appropriate decisions for the children. The court concluded that Mother's position on this point was "slightly unreasonable." The court also found the children were well-adjusted and the parties were generally cooperative, despite their mutual resentment. The record supports these findings. The parties were able to eventually agree on medical treatment for one child despite Father's initial concerns. The court considered the evidence of disagreement between the parents but determined, after hearing the testimony, that the parties could exercise joint legal decision-making. Mother asks this court to view the evidence differently, but we do not reweigh conflicting evidence on appeal. *Hurd*, 223 Ariz. at 52, ¶ 16.

**¶26**         Mother also argues the superior court failed to consider that it could grant her final decision-making authority on certain issues but not all. But she has waived this argument because she does not identify the portion of the trial record showing where she made this argument in the superior court. *See Myrick,* 235 Ariz. at 495, ¶ 11. And even apart from waiver, Mother has shown no error by the superior court in addressing decision-making authority.

## V.      Summer Parenting Time

¶27        The superior court ordered a 5-2-2-5 parenting time schedule during the school year and an alternating one-week schedule for the summer months.  Mother argues the summer parenting time order is not in the children's best interests because it requires them to spend one week apart from each parent.  We review parenting time orders for an abuse of discretion.  *Engstrom*, 243 Ariz. at 471, ¶ 4.

¶28        No evidence supports Mother's claim that the summer schedule, which still provides equal parenting time, is detrimental to the children, who were twelve and nine at the time of the decree.  On the record presented, Mother has shown no error in the discretionary ruling.

## VI.     Proposed Findings of Fact and Conclusions of Law

¶29        The superior court ordered the parties to submit any proposed findings of fact and conclusions of law at least seven days before the trial.  Father filed his proposed findings of fact and conclusions of law three days before the hearing.  At trial, Mother objected in writing and orally to Father's untimely submission and asked for permission to submit proposed findings of fact and conclusions of law within ten business days after trial.  The court denied Mother's request because it did not want to delay its ruling.  The decree entered by the court, however, was in a form prepared by the court, which did not adopt Father's proposal and differs substantially from it.  We have jurisdiction to review this ruling under A.R.S. § 12-2102(A) (for "an appeal from a final judgment," appellate courts "shall review any intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error, whether a motion for new trial was made or not[]").  We review the court's decision to deny Mother's untimely request for an abuse of discretion.  *See Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 153, ¶ 40 (App. 2009) (sanctions imposed for violating a court order are reviewed for abuse of discretion).

¶30        The superior court had discretion to deny Mother's untimely request.  *See* Ariz. R. Fam. Law P. 76.2(a)(1), (b)(2) (court may sanction a party by prohibiting them from supporting or opposing designated arguments when that party fails to obey a pretrial order).  According to Mother, the ruling was prejudicial because the court adopted Father's proposed findings of fact and conclusions of law on the 2017 tax liability and spousal maintenance without exercising its independent judgment.  However, on these issues, the court's findings differ significantly from

Father's proposed findings, which also indicates that the court exercised its independent judgment. *See Elliott,* 165 Ariz. at 134 (when a party requests findings of fact, the court must independently make findings on all relevant facts). Mother has not shown an abuse of discretion.

## VII. Rule 83 Motion to Amend the Decree

**¶31** Mother's challenge to the denial of her Rule 83 motion to amend the decree is limited to her appellate briefs incorporating the Rule 83 motion to amend the decree by reference. Incorporating a motion by reference does not comply with ARCAP 13(a)(7), which requires a party to provide supporting arguments and citations of authority. Thus, her argument is waived, and we do not consider it. *Brown v. U.S. Fid. & Guar. Co.,* 194 Ariz. 85, 93, ¶ 50 (App. 1998) (citing former ARCAP 13(a)(6), now 13(a)(7)).

## VIII. Orders to Release Refinance Proceeds

**¶32** Consistent with the parties' pretrial agreement, Mother refinanced the marital home in her name. However, she withdrew $44,619.66 in equity, which her attorney has since held in his trust account. After accounting for some offsets, the superior court found that Mother owed Father $44,574 from these proceeds. The decree ordered Mother's attorney to immediately release the funds to Father. Two days after Mother sought relief under Rule 83, Father petitioned for immediate release of the funds. The court granted Father's request, as amended, and he then moved for sanctions when Mother's attorney failed to release the funds.

**¶33** The day after Mother appealed from the decree, the superior court granted Father's request for attorneys' fees in an amount to be determined as a sanction for the failure to release the funds. Later, the court awarded Father $2,000 in attorneys' fees, to be paid by Mother's attorney based in part on "habitual non-compliance" with court orders.

**¶34** While the sanctions issue was pending, the parties were also litigating whether Mother must file a supersedeas bond. Two days before it sanctioned Mother's attorney for failing to immediately release the funds, a different judge ruled that the funds were to remain in Mother's attorney's trust account and Mother did not have to post a bond. Mother's attorney then moved for relief from the sanctions order.

**¶35** After this court decided Mother's first appeal, but before entry of the appellate mandate in that appeal, Father renewed his request

for the immediate release of the funds. Mother objected, *inter alia*, due to her pending Rule 83 motion. She also notified the court that it had not ruled on the motion for relief from the order sanctioning her attorney. In two separate orders issued on the same day, the superior court (1) denied Mother's Rule 83 motion and (2) ordered that Mother's attorney must release the funds to Father by a certain date.

### A. Order to Release Funds

¶36 Mother contends the superior court acted outside the appellate mandate when it ruled on Father's renewed request to release funds. We lack jurisdiction over her attempt to argue that the superior court failed to properly follow the mandate in the first appeal. 1 ARIZONA APPELLATE HANDBOOK 2.0 Ch. 11 § 1.3(B)(i) at 11.13 (2020) ("The superior court's entry of judgment based on the appellate court's specific mandate and opinion is not appealable. The appropriate method of seeking review of a claim that the superior court failed to properly follow the appellate court's mandate is instead through a special action." (citation omitted)). Regardless, in the first appeal, we held that the superior court erred in striking Mother's Rule 83 motion and remanded for the court to consider and rule on that motion. *Shields*, 2020 WL 6840547, at *2, ¶¶ 8–9. The mandate meant that Mother's Rule 83 motion was now pending. The fact Father sought release of the funds while the court was simultaneously deciding Mother's Rule 83 motion does not mean the court went outside the mandate.

### B. Motion for Relief from Sanctions

¶37 Mother also argues the superior court abused its discretion because it did not rule on her attorney's motion for relief from sanctions. In responding to Father's renewed request to release the funds, Mother reminded the court of her attorney's January 2020 motion for relief from the sanctions judgment. The court held a status conference addressing Father's renewed request to release the funds but Mother has not provided a transcript of that proceeding. The court later granted Father's request without addressing Mother's motion for relief from sanctions.

¶38 A motion that is not directly ruled on by the superior court is deemed denied by operation of law. *McElwain v. Schuckert*, 13 Ariz. App. 468, 470 (1970). When the court ruled on Father's renewed request, it resolved the issues related to the refinance funds, including the motion for relief from sanctions.

## IX.     Attorneys' Fees, Sanctions, and Costs

**¶39**        Mother asks us to sanction Father, alleging his brief contains misleading arguments and citations to authority.  Although Father has misstated the holding of some authorities, his actions do not warrant sanctions.

**¶40**        Both parties request an award of attorneys' fees on appeal. Father is not represented on appeal by an attorney, so he is not entitled to attorneys' fees. *See Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC,* 235 Ariz. 125, 126, ¶ 5 (App. 2014) ("[P]arties who represent themselves in a legal action are not entitled to recover attorney fees."). Mother failed to provide any facts or argument supporting her request for fees under A.R.S. § 25-324.  In our discretion, we deny her request.  Because Father is the more successful party on appeal, he is awarded taxable costs subject to compliance with ARCAP 21.

## CONCLUSION

**¶41**        We vacate the superior court's denial of Mother's request for attorneys' fees and remand for reconsideration consistent with this decision.  We affirm all other rulings in the decree and post-decree orders.

